## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **WOLVERINE BARCODE IP, LLC,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:25-cv-00316-DC-DTG |
| § | |
| **MCDONALD'S CORPORATION,** § | JURY TRIAL DEMANDED |
| § | |
| Defendant. § | |

**DEFENDANT MCDONALD'S CORPORATION'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................................... 1

III. LEGAL STANDARD........................................................................................................ 6

    A. The *Iqbal/Twombly* Pleading Standard Under Fed. R. Civ. P. 12(b)(6)................. 6
    B. A More Definite Statement Under Fed. R. Civ. P. 12(e)........................................ 6
    C. Divided Infringement Of A Method Claim. ........................................................... 7

IV. ARGUMENT..................................................................................................................... 8

    A. Wolverine Barcode's Direct Infringement Claim should be Dismissed Because It Fails to allege a Single Actor Performs the Entire Method or a Divided Infringement Theory. ................................................................................ 8

        1. Both the plain claim language and Wolverine Barcode's allegations require the activity of multiple different actors. ....................... 8
        2. The FAC fails to plausibly allege a joint infringement theory. ................ 10
        3. Wolverine Barcode's Indirect Infringement Claim should also be Dismissed Because It Fails to allege an Underlying Act of Direct Infringement.............................................................................................. 12
        4. Wolverine Barcode's are so Unclear and Ambiguous that a More Definite Statement is Needed................................................................... 13

V. CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ..................................................................7

*ALD Soc. LLC v. T-Mobile US, Inc.*,
  No. WA-22-CV-973-FB, 2023 WL 11826675 (W.D. Tex. Sept. 29, 2023) ...........................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................6, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................6, 13

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ................................................................................6, 9

*Bradley v. Chiron Corp.*,
  136 F.3d 1317 (Fed. Cir. 1998) ..............................................................................9

*Brown v. Whitcraft*,
  No. 3:08-CV-0186-D, 2008 WL 2066929 (N.D. Tex. May 15, 2008) .......................7

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 18-cv-300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ........................11

*CTD Networks, LLC v. Google, LLC*,
  688 F. Supp. 3d 490 (W.D. Tex. 2023), *appeal dismissed*, No. 2023-2428,
  2024 WL 2587917 (Fed. Cir. May 24, 2024) .....................................................9, 11

*De La Vega v. Microsoft Corp.*,
  No. 19-cv-612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ...............7, 8, 11

*Estech Systems, Inc. v. Regions Financial Corp.*,
  2020 WL 6324321 (W.D. Tex. Oct. 28, 2020) ...................................................6, 14

*Grecia v. PayPal, Inc.*,
  No. W-21-cv-309-ADA, 2022 WL 22878091 (W.D. Tex. Aug. 15, 2022) .........11, 12

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2017) ..........................................................7, 9, 10, 11, 12

*Mullen Indus. LLC v. Meta Platforms, Inc.*,
  2024 WL 5396869 (W.D. Tex. Nov. 14, 2024) ......................................................6

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
  No. 2:24-CV-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024) .......7, 11, 12, 13

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) ...............................................................................13

*Shah v. Bank of Am., N.A.*,
  No. 21-cv-1170-JKP, 2022 WL 45040 (W.D. Tex. Jan. 4, 2022) ............................................. 6

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) .................................................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................................ 6, 14

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1, 6

Fed. R. Civ. P. 12(e) .................................................................................................................. 1, 6, 7

Defendant McDonald's Corporation ("McDonald's") respectfully moves to dismiss the First Amended Complaint ("FAC," Dkt. 15) filed by Wolverine Barcode, LLC ("Wolverine Barcode") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## I.    INTRODUCTION

In this patent infringement action, Wolverine Barcode attempts to read a patent directed to "*offline* commerce transactions" to avoid credit card fees onto an "*online* service account" associated with the "McDonald's Rewards Program." Dkt. 15-1 (U.S. Patent No. 9,280,689) at 1:17-31); Dkt. 15-2 (Claim Chart) at p. 22 (emphasis added). Although these strained allegations suffer from many shortcomings, this motion seeks to dismiss Wolverine's Barcode's allegations for two simple reasons: (1) the FAC fails to allege a viable divided infringement theory when both the plain claim language and allegations implicate multiple actors; and (2) the FAC fails to allege any act of direct infringement sufficient to support an indirect infringement theory.

Further, to the extent the Court does not dismiss the FAC, Wolverine Barcode's allegations are unclear, ambiguous, and often fail to do more than reiterate the claim language. As a result, McDonald's requests that the Court order Wolverine Barcode to file a more definite statement specifically explaining its infringement theory.

For these reasons and those that follow, McDonald's motion should be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2025, Wolverine Barcode filed this action against McDonald's alleging infringement of U.S. Patent No. 9,280,689 ("the '689 patent"). Dkt. 1. The '689 patent describes "the present invention" as relating to "offline commerce transactions using the user ID Barcode as the user identifier for purchasing goods priced at micro payment or non-micro payment level [*sic*] using the fund or credit limit available at the user's account in the server identified as a User

Vendor Management Server (UVM)." Dkt. 15-1 ('689 patent) at 1:17-21. According to the patent's background, it is impractical for vendors to accept credit card payments for "micro payments" (e.g., five or ten cents) because the processing cost is too high. *Id*. at 1:26-31. To overcome this problem, the '689 patent describes a method in which users may use a barcode (on a smartphone or credit card) associated with a user account that has been preloaded with funds to facilitate payments at participating vendors without involving a third party to process those transactions. *Id*. at 2:34-3:50.

The '689 patent includes three claims, all of which are method claims. Dkt. 15-1 ('689 patent) at claims 1-3. Independent claim 1, the only claim identified by Wolverine Barcode's claim chart, claims the following method:

> 1. A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising:
>
> (a) providing a personal code to a person for their use to purchase goods;
>
> (b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;
>
> (c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;
>
> (d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;
>
> (e) depositing funds in said User Account to establish a credit limit;
>
> (f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;
>
> (g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Vendor Management Server;
>
> (h) comparing the purchase price with the funds in said User Vendor Management

> Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;
>
> (i) forwarding the approval signal to the vendor cash register; and
>
> (i) repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

'689 patent, claim 1. As the plain claim language indicates, certain steps such as "conducting purchases at vendors" (step f) are performed by customers, and other steps such as "providing a personal code to a person for their use to purchase goods" (step a) are not performed by customers.

On September 29, 2025, McDonald's filed a motion to dismiss the Complaint for failure to state a claim on the basis that Wolverine Barcode did not and could not allege that a single actor performs the entire method and thus could not sufficiently allege infringement. Dkt. 13 at 10-13. Specifically, Wolverine Barcode alleged in the claim chart filed with the original Complaint that some method steps were performed *by the McDonald's "system"* involved in the McDonald's Rewards Program, and other acts (examples below) were performed *by customers*:

| Step (a) | For example, McDonald's Rewards Program allows a person to log into the app so they can earn rewards for eligible purchases. |
|---|---|
| Step (f) | For example, in McDonald's Rewards Program, when you make an eligible purchase, the vendor's system uses an online service to process your transaction. At the register or kiosk, you scan the barcode shown on the Offer page (which displays prices) along with your unique QR code from your online account. Both codes are then transmitted to the online service to record the purchase and update your rewards account. |

Dkt. 13 at 4 (quoting Dkt. 1-2 at pp. 5, 12) (highlighting added).

In response, Wolverine Barcode filed the FAC on October 13, 2025. Dkt. 15. But the FAC does nothing to cure any of the deficiencies observed by McDonald's in its first motion to dismiss.[1]

---

[1] Aside from changing "Original Complaint" to "First Amended Complaint," and asserting that the FAC "is submitted no later than 21 after" McDonald's motion to dismiss, the allegations in the FAC remain exactly the same as those in the Complaint. *Compare* Dkt. 1 *with* Dkt. 15.

3

Wolverine Barcode's allegations remain vague and inconsistent as to who directly infringes the asserted '689 patent claims or how they are infringed. Without specifying which actor performs the claimed method, Wolverine Barcode alleges that McDonald's "maintains, operates, and administers systems, products, and services that conducting [*sic*] offline transactions that use a barcode as a method of personal identification that infringes one or more of claims 1-3 of the '689 patent." FAC, ¶ 8. Confusing the claimed method claims with system claims, Wolverine Barcode alleges that McDonald's "put the inventions claimed by the '689 Patent into service (i.e., used them)." *Id*.

The FAC then pivots to indirect infringement theories in which McDonald's allegedly induced or contributed to the infringement of the '689 patent method claims when it "actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services such as to cause infringement of one or more of claims of the '689 patent." FAC, ¶¶ 10-11.

The claim chart attached as Exhibit B to the FAC continues to offer no more clarity. For some steps it appears to point to acts allegedly performed by the McDonald's "system" involved in the McDonald's Rewards Program:

| Step (c) | For example, ==McDonald's Rewards Program stores your login information== as a unique online account with a QR code. This account is then used to track and authorize your |
| --- | --- |
| Step (d) | For example, ==McDonald's Rewards Program creates an online account== that is directly linked to the login you use in our app. |
| Step (g) | For example, in McDonald's Rewards Program, ==the system detects your unique online account QR code== and then forwards your ID barcode along with the eligible purchase price to the online service for processing. |
| Step (h) | For example, in McDonald's Rewards Program, ==the system compares the eligible purchase price with the available points== in your online account. If you have enough points, the system unlocks a reward for you. |

Dkt. 15-2 at pp. 8, 9, 15, 17 (highlighting added).

For other steps, the claim chart continues to identify acts performed by customers:

4

| Step (a) | For example, McDonald's Rewards Program <mark>allows a person to log into the app</mark> so they can earn rewards for eligible purchases. |
|---|---|
| Step (f) | For example, in McDonald's Rewards Program, <mark>when you make an eligible purchase,</mark> the vendor's system uses an online service to process your transaction. At the register or kiosk, <mark>you scan the barcode shown</mark> on the Offer page (which displays prices) along with your unique QR code from your online account. Both codes are then transmitted to the online service to record the purchase and update your rewards account. |

Dkt. 15-2 at pp. 5, 12 (highlighting added).

The primary substantive change to Wolverine Barcode's claim chart appears to be the addition of a conclusory allegation in purple text for each method step asserting that "McDonald's server performs" a certain act. Dkt. 15-2 at pp. 5-20. The updated claim chart also asserts infringement of dependent claims 2 and 3, based upon a combination of acts allegedly performed by McDonald's "system" or "server" (as discussed above for independent claim 1) and customers:

| Claim 2 | McDonald's User ID Barcode is <mark>stored by said person</mark> in a cell phone. |
|---|---|
| Claim 3 | McDonald's User ID Barcode is <mark>stored by said person on a label secured to a user's cell phone.</mark> |

Finally, Wolverine Barcode fails to provide sufficient explanation of its infringement theory (regardless of the actor(s) involved) for several claim elements, either simply parroting the claim language or ignoring various claim language. For example, even though step (a) of claim 1 requires "providing a personal code to a person for their use to purchase goods," Wolverine Barcode alleges only that the "McDonald's Rewards Program allows a person to log into the app" without ever alleging that McDonald's provided them with a "personal code." Dkt. 15-2 at p. 5. Similarly even though that step (d) requires "a User Vendor Management Server" and step (f) requires a separate "vendor server," Wolverine Barcode alleges throughout its claim chart that a singular "McDonald's server" performs these claim steps without explaining how it could or would perform the acts of two different claimed servers. Dkt. 15-2 at pp. 5-20.

5

## III.  LEGAL STANDARD

### A.  The *Iqbal/Twombly* Pleading Standard Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Thus, a patentee cannot assert a plausible infringement claim "by reciting the claim elements and merely concluding that the accused product has those elements." *Mullen Indus. LLC v. Meta Platforms, Inc.*, 2024 WL 5396869, at *2 (W.D. Tex. Nov. 14, 2024) (quoting *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1352 (Fed. Cir. 2021)). "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Shah v. Bank of Am., N.A.*, No. 21-cv-1170-JKP, 2022 WL 45040, at *2 (W.D. Tex. Jan. 4, 2022) (citations and quotations omitted).

### B.  A More Definite Statement Under Fed. R. Civ. P. 12(e)

Federal Rule of Civil Procedure Rule 8 requires that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must provide enough information for the defendant to identify the accused products and how they infringe on the asserted patent. *See Estech Systems, Inc. v. Regions Financial Corp.*, 2020 WL 6324321 (W.D. Tex. Oct. 28, 2020). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). A Rule

6

12(e) motion requires a court to determine whether the complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." *Brown v. Whitcraft*, No. 3:08-CV-0186-D, 2008 WL 2066929, at *1 (N.D. Tex. May 15, 2008).

### C. Divided Infringement Of A Method Claim.

For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). "[T]o meet the *Twombly/Iqbal* pleading standard for joint infringement by the combined acts of multiple parties, the complaint must plead "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *De La Vega v. Microsoft Corp.*, No. 19-cv-612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (quoting *Lyda v. CBS Corp.*, 838 F.3d 1331, 1336 (Fed. Cir. 2017)).

To determine whether an entity directs or controls others' performance, courts look to general principles of vicarious liability. *Akamai*, 797 F.3d at 1022. An actor may be liable for infringement if they act through an agent or contract with another to perform one or more steps of a claimed method. *Id*. "To determine whether two or more actors form a joint enterprise, courts apply a four-pronged test: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2024 WL 4870768, at *2 (E.D. Tex. Nov. 21, 2024) (citing *Akamai*, 797 F.3d at 1022).

7

IV.  **ARGUMENT**

   A.  **Wolverine Barcode's Direct Infringement Claim should be Dismissed Because It Fails to allege a Single Actor Performs the Entire Method or a Divided Infringement Theory.**

   1.  *Both the plain claim language and Wolverine Barcode's allegations require the activity of multiple different actors.*

Claim 1 plainly requires multiple actors. For example, step (a)—"*providing* a personal code *to* a person for their use to purchase goods"—is *not* performed by the "person" that "purchase[s] goods" (i.e., it is not performed by the customer). '689 patent, claim 1 (emphasis added). On the other hand, step (f)—"conducting purchases at vendors . . . ."—clearly is performed by the customer doing the purchasing. *Id*. "Because claim 1 on its face plainly requires at least multiple actors," "this is a case of joint infringement." *De la Vega*, 2020 WL 3528411, at *4.

Consistent with the plain claim language, Wolverine Barcode's claim chart also implicates multiple actors. For instance, for steps (c), (d), (g), and (h), Wolverine Barcode points to acts carried out by the MyMcDonald's Rewards Program itself: "*McDonald's Rewards Program stores your login information . . .*" (step c); "*McDonald's Rewards Program creates an online account*" (step d); "*in McDonald's Rewards Program, the system detects*" (step g); and "*in McDonald's Rewards Program, the system compares*" (step h). Dkt. 15-2 at pp. 8, 9, 15, 17 (underlining added). But for step (f), the claim chart identifies activity by McDonald's customers as satisfying the "conducting purchases at vendors" limitation: "*when you make an eligible purchase . . . you scan the barcode shown . . . .*" Dkt. 15-2 at p. 12 (underlining added). Similarly, for step (a), the claim also points to an act performed by a customer: "McDonald's Rewards Program allows a person to log into the app . . . ." *Id*. at 5 (underlining added).

After McDonald's raised these issues in its original motion to dismiss (Dkt. 13 at 10-13), Wolverine Barcode tried to put a "band aid" on the problem by simply adding in purple text that a

8

"McDonald's server performs" each claim step. For example, for step (f), which requires "<u>conducting purchases at vendors</u> each having a vendor server wherein each purchase includes <u>scanning product barcodes</u> including product price and said User ID Barcode <u>with a product barcode scanner at the vendor cash register</u> and transmitting both product barcodes and User ID Barcode to said vendor server," Wolverine Barcode alleges that "<u>McDonald's server performs</u> the act of processing an eligible purchase with scanned product barcodes and scanned User ID barcode." Dkt. 15-2 at p. 12 (underlining added). Wolverine Barcode's new allegations directed to "McDonald's servers" fail to state a plausible infringement claim for several reasons.

*First*, merely "alleg[ing] conclusively and without factual support" that a "McDonald's server" performs an act does not "form the basis of a reasonable inference that each claim step was performed by" McDonald's. *Lyda*, 838 F.3d at 1340. Wolverine Barcode "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that [McDonald's server performed] those elements." *Bot M8*, 4 F.4th at 1352-53. The FAC "must support its entitlement to relief with 'factual content,' not just conclusory allegations that [a McDonald's server performs] every claim limitation." *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 499 (W.D. Tex. 2023), *appeal dismissed*, No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024)

*Second*, the Court need not "accept as true the inconsistent allegations" in the FAC that a McDonald's server performs certain acts when Wolverine Barcode's more specific allegations—and the plain claim language—dictate otherwise. *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998). For instance, any suggestion that a "McDonald's server" performs step (f)—which requires "conducting purchases at vendors" and "scanning product barcodes"—is both nonsensical and contradicted by Wolverine Barcode's allegations that McDonald's customers

9

"make an eligible purchase" and "scan the barcode" from their online account. *See* Dkt. 15-2 at p. 12 ("*[I]n McDonald's Rewards Program, when <u>you</u> make an eligible purchase . . . <u>you</u> scan the barcode shown on the Offer page (which displays prices) along with <u>your</u> unique QR code from <u>your</u> online account.*" (underlining added). "[D]ismissal is appropriate where a party . . . asserts an implausible construction or alleges facts inconsistent with infringement." *ALD Soc. LLC v. T-Mobile US, Inc.*, No. WA-22-CV-973-FB, 2023 WL 11826675, at *8 (W.D. Tex. Sept. 29, 2023).

*Third*, even if Wolverine Barcode's conclusory, implausible, and inconsistent allegations were entitled to any weight (they are not), they still do not show that McDonald's performs the necessary claim steps. For step (f), the bald conclusion that a "McDonald's server performs the act of processing an eligible purchase with scanned product barcodes and scanned User ID barcode," still does not establish that McDonald's "conduct[s] purchases at vendors" or "scan[s] product barcodes," as required by the claim. Dkt. 15-2 at p. 12. Similarly, for step (a), the bald conclusion that a "McDonald's server performs the act of communicating with a person via person's app," still does not establish that McDonald's "provid[es] a personal code to a person for their use to purchase goods," as required by the claim. *Id*. at p. 5. Wolverine Barcode's implausible, bald conclusions should be rejected, and the FAC should be dismissed for failing to allege a viable direct infringement theory.

        2.    *The FAC fails to plausibly allege a joint infringement theory.*

Despite relying on the activity of multiple actors to perform the method of claim 1, Wolverine Barcode "fails to plausibly plead sufficient facts to ground a joint infringement claim under [the Federal Circuit's] *Akamai* decision." *Lyda*, 838 F.3d at 1340. The FAC does not (and cannot) allege that McDonald's is "a joint enterprise with" its customers. *Id*. Nor does Wolverine Barcode assert that McDonald's "directed or controlled" its customers' activities, such as their purchases. *Id*. Rather, the FAC asserts in conclusory fashion that "but for [McDonald's] actions"

10

there would be no infringement, and McDonald's "acts complained of herein caused those claimed-invention embodiments as a whole to perform." FAC, ¶ 8. These allegations do not even appear directed to joint infringement, much less do they suggest that McDonald's directed or controlled its customers' actions.

Courts routinely dismiss direct infringement claims where, as here, the claimed method requires multiple actors and the patentee fails to plausibly allege joint infringement. *See, e.g.*, *Lyda*, 838 F.3d at 1340 (affirming motion to dismiss where divided infringement was not adequately pled); *De la Vega*, 2020 WL 3528411, at *2-7; *Mullen Indus.*, 2024 WL 4870768, at *4; *Grecia v. PayPal, Inc.*, No. W-21-cv-309-ADA, 2022 WL 22878091, at *7 (W.D. Tex. Aug. 15, 2022).[2] These cases are instructive.

In *De La Vega*, a case that dismissed claims against both Microsoft and Google, the court found that, "[i]n both of his complaints, Plaintiff alleged that Microsoft and Google each perform all steps of claim 1." 2020 WL 3528411, at *3. "But while explaining how Microsoft and Google each perform all steps, Plaintiff also illogically contends that actors other than Microsoft or Google perform some of the claim steps." *Id*. And because the asserted claim "on its face plainly requires at least multiple actors . . . [the] Defendants are correct that this is a case of joint infringement." *Id.* at *4. Nevertheless, the *De La Vega* complaint—like the Wolverine Barcode complaint here—"fail[ed] to make even conclusory allegations of such direction, control, or joint enterprise, much less allege any facts in support of the same." *Id*. The *De La Vega* court dismissed the plaintiff's direct infringement claim, and the same result should follow here.

---

[2] *See also CTD Networks*, 688 F. Supp. 3d at 503 ("[A] method patent is not directly infringed unless all the steps identified in the method are carried out by the same entity."); *Chapterhouse, LLC v. Shopify, Inc.*, No. 18-cv-300-JRG, 2018 WL 6981828, at *4 (E.D. Tex. Dec. 11, 2018) (dismissing direct infringement claim that lacked "any assertion that Defendant directs, controls, or has any other relationship with" third-party app provider).

In *Grecia*, the court likewise found that the plaintiff was "required to allege joint infringement" because the complaint acknowledged that certain limitations were "performed by third-party software:"

> Although the Court agrees that the allegation should be taken as true, Grecia does not provide a convincing argument why Grecia's allegations do not constitute joint infringement. Additionally, the Court finds that *De La Vega* is relevant and applicable to this case. Thus, the Court looks to see if Grecia meets the standard under *De La Vega*. Under this test, Grecia fails to allege that PayPal exercises the "requisite direction and control" over the other party's performance. Further, Grecia fails to allege actions which would constitute a joint enterprise by the actors such that the actions of one actor could be attributed to the controlling party. Therefore, Grecia failed to plead that the accused products met the limitations found in independent claim 15.

*Grecia*, 2022 WL 22878091, at *7.

Finally, in *Mullen*, the court found that:

> The '540 Patent requires multiple actors—a fact that Plaintiff does not seem to dispute. Therefore, this is a case of divided infringement . . . The Court finds that the Complaint does not plausibly plead a claim for divided infringement of the '540 Patent. The Complaint fails to allege that Defendants have the requisite "direction or control" over the other actors' performance. The Complaint fails to allege the existence of a joint enterprise.

2024 WL 4870768, at *3 (internal citations omitted).

Like these cases, Wolverine Barcode "fails to plausibly plead sufficient facts to ground a joint infringement claim under [the Federal Circuit's] *Akamai* decision," and its direct infringement claims do "not satisfy the *Iqbal/Twombly* pleading standard." *Lyda*, 838 F.3d at 1340. The Complaint should therefore be dismissed.

> 3. *Wolverine Barcode's Indirect Infringement Claim should also be Dismissed Because It Fails to allege an Underlying Act of Direct Infringement.*

The FAC also fails to allege an indirect infringement claim because, among other deficiencies, Wolverine Barcode has not alleged an underlying act of direct infringement by a McDonald's customer or other third-party actor. "It is axiomatic that there can be no inducement

12

or contributory infringement without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). Here, Wolverine Barcode fails to adequately allege an underlying act of direct infringement.

The FAC's unsupported allegation that McDonald's "has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services such as to cause infringement of one or more of claims of the '689 patent" is a bald conclusion that need not be accepted as true on a motion to dismiss. *See Twombly*, 550 U.S. at 555 (citation omitted); *see also Iqbal*, 556 U.S. at 678-79. As shown above, Wolverine Barcode's assertion that McDonald's customers are direct infringers is contradicted by Wolverine Barcode's own allegations that "McDonald's servers perform" certain steps of the claimed method. *See* Dkt. 15-2 at pp. 5-20. Because Wolverine Barcode "has failed to sufficiently plead direct infringement" of the '689 patent, Wolverine Barcode's "indirect infringement claims also fail." *Mullen Indus.*, 2024 WL 4870768, at *6. The FAC should be dismissed on this basis as well.

> 4. *Wolverine Barcode's are so Unclear and Ambiguous that a More Definite Statement is Needed.*

To the extent that the Court elects not to dismiss the FAC, McDonald's alternatively moves for a more definite statement to address both the issues described above and those set forth below. Specifically, Wolverine Barcode should be required to explain its joint infringement theory, to recite the actors that allegedly perform each step of the claimed method, and to provide further detail of its infringement allegations for each claim element below.

*First*, Wolverine Barcode alleges that McDonald's "conduct[s] offline transactions" as required by the claims, yet offers no explanation of what the offline transactions are or how they are "offline." *See* FAC, ¶ 8; *see also* Dkt. 15-2 at pp. 4-5. In fact, Wolverine Barcode's claim chart does nothing more than regurgitate the claim language for this element. *See* Dkt. 15-2 at pp. 4-5.

13

Nor has Wolverine Barcode explained how the accused "*online* services account" and "*online* services" operate to conduct *offline* transactions. *See id.* at pp. 4-22. This is especially true since Wolverine Barcode even cites the requirement that "You must use the McDonald's app or other *online services* in order to exchange your points for rewards." *Id.* at p. 18 (emphasis added).

*Second*, Wolverine Barcode alleges that McDonald's "converts" a "personal code" into a "User ID Barcode [that] correspond[s] to said personal code," but fails to explain how the conversion takes place, what "personal code" information is converted into the "User ID Barcode," or how the User ID Barcode "corresponds" to the personal code. *See id.* at pp. 6-7. Similarly, Wolverine Barcode fails to explain how a person stores the "User ID Barcode" as required by the claims. *Id.* at pp. 7-9.

*Finally*, Wolverine Barcode alleges that the McDonald's accused functionality "scan[s] product barcodes including product price," but fails to explain how the barcode includes the product price. *See* Dkt. 15-2 at pp. 12-14. Instead, Wolverine Barcode states that McDonald's sets prices, without ever explaining how the price is included in the product barcode. *Id.* at p. 14. Wolverine Barcode's reliance on disparate portions of McDonald's website, terms and conditions, and online dictionaries, are insufficient to comply with Fed. R. Civ. P. 8.

All of these threadbare allegations fail to put McDonald's on notice of Wolverine Barcode's infringement theories. Thus, Wolverine Barcode should be ordered to provide more detail regarding its joint infringement theory, the actors for each method step, and the theory of infringement for the claim elements noted above. *See, e.g., Estech Sys.*, 2020 WL 6324321 at *3.

## V.   CONCLUSION

For the reasons stated herein, McDonald's respectfully requests that Wolverine Barcode's FAC be dismissed for failure to state a claim for relief. In the alternative, McDonald's requests that the Court order Wolverine Barcode to provide a more definite statement.

Dated: October 27, 2025                    Respectfully submitted,

                                                    **GREENBERG TRAURIG, LLC**

                                                    By: <u>*/s/ Ashley Moore*</u>
                                                           Ashley N. Moore
                                                           State Bar No. 2407478
                                                           Ashley.moore@gtlaw.com
                                                           2200 Ross Avenue
                                                           Suite 5200
                                                           Dallas, Texas 75201
                                                           Telephone: (214) 665-3600
                                                           Fax: (214) 665-3601

                                                ***Counsel for Defendant McDonald's Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 27th day of October, 2025.

/s/ *Ashley Moore*
Ashley Moore